IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT AT BETHEL

JANE DOES 1 through 5, )
)
Plaintiffs, )
)
vs. )
)
THE SOCIETY OF JESUS, OREGON )
PROVINCE; THE SOCIETY OF JESUS )
ALASKA; THE SOCIETY OF JESUS, ) Case No. 4BE-09-135 CI
FATHER GENERAL ADOLFO NICOLAS, )
SJ AND HIS PREDECESSORS; THE )
PIONEER EDUCATIONAL SOCIETY; )
FATHER STEPHEN SUNDBORG, S.J.; )
FATHER HENRY G. HARGREAVES, S.J.; )
and DOES 1 through 100, inclusive, )
)
Defendants. )

## COMPLAINT FOR DAMAGES

Plaintiffs Jane Does 1 through 5 by and through their attorneys Power and Brown, LLC, complain and allege as follows:

*ALLEGATIONS COMMON TO ALL CLAIMS*

1. Plaintiffs, Jane Does 1 through 5 at the time of the wrongful conduct described herein, were residents of Hooper Bay, Alaska. The Doe names in this complaint are pseudonyms, used to protect the identities of the Plaintiffs in this case.

2. Because the events described in this Complaint are of an extremely personal and sensitive nature and occurred during the minority of all of the named Plaintiffs, all Plaintiffs choose to identify themselves only by pseudonyms in the public documents filed in this case. The true names of the plaintiffs, and the correlative pseudonyms for each, will be filed with the court under seal.

3. Defendant The Society of Jesus, Oregon Province (also referred to herein as the Oregon Province or the Jesuits) is a foreign corporation incorporated in Oregon on February 21, 1918. Its agent for service of process is Mark A. Stayer, 1211 SW Fifth Ave., Ste. 1700, Portland, OR, 97204. The chief operating officer of defendant Oregon Province is Father Patrick J. Lee, S.J. He is the person personally responsible for the personnel and operations of Oregon Province, which reaches from Point Barrow, Alaska, to Southern Oregon and from the Pacific Ocean to the plains of Eastern Montana. According to the Province's website (www.nwjesuits.org) some 320 Jesuit priests work in the province, serving 15,000 students at two universities and four high schools, parishioners, and Native American missions. Upon ordination, each and every Jesuit priest of defendant Society of Jesus, Oregon Province, vows poverty, complete continence and obedience to the Pope, and/or his religious supervisors and their successors. In addition, the Society of Jesus, Oregon Province is responsible for the supervision and the behavior of each and every Jesuit Priest and non-Jesuit Lay Volunteer working with or under the supervision of a Jesuit priest, or who is assigned to any location within the Province.

4. Defendant Society of Jesus, Alaska (also referred to herein as the Alaska Jesuits or jointly with the Oregon Province as the Jesuit defendants) is a domestic corporation, incorporated in Alaska on July 31, 1964. It's principal office in Alaska is located at 1318 Peger Road, Fairbanks, Alaska, 99709. Its agent for service of process is Paul M. Cochran, P.O. Box 49, St. Mary's, Alaska, 99658. The sole shareholder of defendant Alaska Jesuits is Father Patrick J. Lee, S.J, the Provincial and chief operating officer of the Society of Jesus, Oregon Province. He is the person personally responsible for the personnel and operations of defendant Alaska Jesuits, which, (according to its amended and restated Articles of

PAGE 2 of 16 EXHIBIT 2

Case 4:09-cv-00018-RRB    Document 1-2    Filed 04/10/09    Page 2 of 16

Incorporation on file with the State of Alaska Department of Commerce and Economic Development, Corporations Section) exists to further the interests of the Society of Jesus and to acquire property and things of value and to "generally deal with and improve the property of the corporation." In addition, the Society of Jesus, Alaska is responsible for the supervision and the behavior of each and every Jesuit Priest and non-Jesuit Lay Volunteer working with or under the supervision of a Jesuit priest, or who is assigned to any location within the State of Alaska.

5. Defendant The Society of Jesus, Father General Adolfo Nicolas SJ and his Predecessors (hereinafter referred to as "Father General") is a foreign religious entity, with its headquarters in Rome, Italy and operating and controlling numerous regional offices all over the world. Father General Adolfo Nicolas functions in two ways. First, the Father General owns and controls the assets of the Society of Jesus worldwide. Second, the Father General exerts complete control over the Order worldwide in an essentially monarchial fashion as applied to all Jesuits priests and members of the Society of Jesus. Each and every member of the Society of Jesus owes the Father General absolute obedience. Failure to fulfill this duty of absolute obedience is grounds for immediate removal by the Father General. The Father General's authority is, in part, set forth in the Society of Jesus' General Congregation 35, Decree 5, page 36, paragraph 7 and 4 in the Constitutions of the Society of Jesus, numbers 666 and 719.

6. Defendant the Pioneer Educational Society (also referred to herein as Pioneer or jointly with the Oregon Province, the Alaska Jesuits and the Father General as the Jesuit defendants) is a foreign religious non-profit corporation, incorporated in Oregon on August 18, 1919. Its principal offices are located at 3215 SE 45th Avenue, Portland, Oregon, 97206

Complaint for Damages
Case No. 4BE-09-_____ CI
Page 3 of 16

(this is also the address of the Provincial of the Oregon Jesuits, Patrick J. Lee, S.J.) and 1107 N Astor, Spokane, Washington, 99202. At all times relevant hereto, the President, Vice-President, Secretary and other officers of the Pioneer Educational Society were members of the Oregon Province of the Society of Jesus. Currently, the President of the Pioneer Educational Society is the Provincial of the Oregon Jesuits, Patrick J. Lee, S.J. The current Vice-President of the Pioneer Educational Society is Thomas Lankenau, the Socius of the Oregon Jesuits. At all times since its incorporation, the Pioneer Educational Society's officers have been high ranking members of the Oregon Jesuits, including but not limited to the Provincials, Socius' and Treasurers of the Oregon Jesuits. Its agent for service of process is Michael A. Tyrrell (the current Treasurer of the Oregon Jesuits and a former Socius of the Oregon Jesuits), 3215 SE 45th Avenue, Portland, Oregon, 97206. Defendant the Pioneer Educational Society is, and at all times relevant hereto was, an altar ego of defendant the Oregon Province of the Society of Jesus. The Pioneer Educational Society and the Oregon Province of the Society of Jesus have, at all times relevant hereto, shared a unity of interest and ownership.

7. At all times mentioned herein, each and every Defendant was an employee, agent, and/or servant of all named defendants, and DOES 1 through 100, inclusive, and/or was under their complete control and/or active supervision. Defendants and each of them are individuals, corporations, partnerships and/or other entities that engaged in, joined in, and conspired together and with Defendants and wrongdoers in carrying out the tortious and unlawful activities described in this Complaint.

8. Defendants DOES 1 through 100, inclusive, and each of them, are sued herein under fictitious names. Plaintiff is ignorant as to the true names and capacities of DOES

Complaint for Damages
Case No. 4BE-09-_____ CI
Page 4 of 16

1 through 100, whether individual, corporate, associate, or otherwise, and therefore sue these Defendants by fictitious names. When their true names and capacities are ascertained, Plaintiff will request leave of Court to amend this Complaint to state their true names and capacities herein.

9. Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein, each fictitiously named Defendant was responsible in some manner or capacity for the occurrences herein alleged, and that Plaintiffs' damages, as herein alleged, were proximately caused by all said DOE Defendants.

10. Each and every named defendant, and DOES 1 through 100, inclusive, are sometimes collectively referred to herein as "Defendants" and/or as "All Defendants"; such collective reference refers to all specifically named Defendants as well as those fictitiously named herein.

11. Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein, there existed a unity of interest and ownership among Defendants and each of them, such that any individuality and separateness between Defendants, and each of them, ceased to exist. Defendants and each of them, were the successors-in-interest and/or alter egos of the other Defendants, and each of them, in that they purchased, controlled, dominated and operated each other without any separate identity, observation of formalities, or other manner of division. To continue maintaining the facade of a separate and individual existence between and among Defendants, and each of them, would serve to perpetrate a fraud and an injustice.

12. Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein, Defendants and each of them were the agents, representatives and/or

PAGE 5/16 EXHIBIT 2

Case 4:09-cv-00018-RRB   Document 1-2   Filed 04/10/09   Page 5 of 16

employees of each and every other Defendant. In doing the things hereinafter alleged, Defendants and each of them, were acting within the course and scope of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

13. Plaintiffs are informed and believes, and on that basis alleges, that at all times mentioned herein, Defendants and each of them were the trustees, partners, servants, joint venturers, shareholders, contractors, and/or employees of each and every other Defendant, and the acts and omissions herein alleged were done by them, acting individually, through such capacity and within the scope of their authority, and with the permission and consent of each and every other Defendant and that said conduct was thereafter ratified by each and every other Defendant, and that each of them is jointly and severally liable to Plaintiffs.

14. Plaintiffs JANE DOES 1 through 5 attended services at the Little Flower of Jesus Parish, located in Hooper Bay, Alaska. This village church is an activity of the Catholic Church and the Jesuit defendants, and was at all times relevant hereto operated, managed, staffed, and controlled by the Jesuit defendants.

15. Joseph Lake was a Deacon of the Little Flower of Jesus Parish, located in Hooper Bay Alaska. He was recruited, trained, and directly supervised by a Jesuit priest, and was placed in charge of a variety of duties at the Little Flower of Jesus Parish.

16. Deacon Lake's sexual predation of children continued for several years with knowledge of the attending Father. During this time Lake engaged or attempted to engage in genital and breast fondling, vaginal rape, and masturbation with Plaintiffs.

17. Defendant Henry G. Hargreaves, S.J., hereinafter identified as "Father

Complaint for Damages
Case No. 4BE-09-_____ CI
Page 6 of 16

Hargreaves," is a Roman Catholic Priest and a member of the Society of Jesus, Oregon Province. His current residence address is Regis Jesuit Community, 1107 N. Astor Street, Spokane, Washington 99202-1724. Father Hargreaves was assigned by the Oregon Province to work as a Roman Catholic priest in Alaska for many years, beginning in 1949 and continuing through the early 2000's, and at all times relevant was a resident of the State of Alaska.

18. At all times relevant, Father Hargreaves worked under the direct supervision of defendants the Oregon Province, the Alaska Jesuits, Father Stephen Sundborg, S.J., the Pioneer Education Society, the Father General and/or DOES 1 through 100, a position presently filled by Father General Adolfo Nicolas, S.J.. Father Hargreaves, born in 1914, was ordained as a Roman Catholic Priest for the Society of Jesus in 1947. He first came to Alaska in 1949 as a Roman Catholic Priest and was given faculties, that is, authority to serve as a Roman Catholic priest, by Bishop Francis D. Gleeson in 1949. Those faculties continued in effect and were not revoked or amended during the time period relevant to this complaint. During his 50-year career with the Society of Jesus, Rome, the Oregon Jesuits, the Alaska Jesuits, and the Fairbanks Diocese in Alaska, Father Hargreaves was assigned to work in Hooper Bay, Chevak, Fairbanks, Bethel, St. Michael, Stebbins, Unalakleet, Nulato, Kotlik, Toksuk Bay, Emmonak, Alakanuk, Numan Iqua, Nelson Island and Tumunak, Alaska. Joseph Lake, Father Hargreaves, Father Donohue and Father Fallert are at times collectively referred to herein as "the abusers."

19. Defendant Stephen Sundborg, S.J., hereinafter identified as "Father Sundborg," is a Roman Catholic Priest and a member of the Society of Jesus, Oregon Province. Father Sundborg currently serves as the President of Seattle University, a Jesuit

institution. From 1990 to 1996, Father Sundborg served as the Provincial of the Oregon Province of the Society of Jesus. The provincial is the personal representative of the Father General at the Province level and the Provincial receives new members into the society on the behalf of the Father General. General Congregation 35, Decree 5, page 40, paragraph 24. The Provinces are a geographic section of the Society of Jesus established for the best administration of the work of the Society of Jesus. Provinces are both created and suppressed by the Father General in Rome.

20. At all times relevant herein, the native village of Hooper Bay, Alaska was essentially a "dumping ground" for Jesuit priests unsuited to serve anywhere else in the Jesuit organization. Once established in Hooper Bay, the priest essentially promoted an environment of child sexual abuse, and in so doing condoned the illicit behavior of Deacon Lake.

21. Defendants, and each of them, intentionally, willfully and recklessly chose to place these known pedophile priests, who condoned the same behavior by their Deacons, in assignments in Native villages for a variety of reasons, including, but not limited to: 1) At all times relevant the Native Alaskan population lived in remote, often inaccessible locales with little or no access to law enforcement, making it virtually impossible for them to report any child sexual abuse to the authorities; and 2) At all times relevant the Native Alaskan population lived in remote, often inaccessible locales with little or no access to proper healthcare, making it virtually impossible for any trained healthcare provider to detect the signs of childhood sexual abuse in the Native population. Defendants, and each of them, made a calculated effort, initiated at the highest levels of the Society of Jesus, including, but not limited to, each and every Father General of the Order during the time periods alleged herein,

Complaint for Damages
Case No. 4BE-09-_____ CI
Page 8 of 16

POWER AND BROWN LLC
Attorneys At Law
P.O. Box 1809 • Bethel, Alaska 99559
TELEPHONE: 907.543.4700
FACSIMILE: 907.543.3777

to "dump" these "problem priests" in a location in which the priests could avoid detection and continued to sexually abuse countless Native children.

22. At all times relevant herein, the hierarchy of the Society of Jesus exhibited a callous disregard towards the mental, physical and emotional well-being, health and welfare of the Native population of Alaska and any possible effects the sexual abuse of minor children would have on the Native population. In a previously filed complaint against named Defendants, it was noted Father William J. Loyens, S.J.6, a member of the Society of Jesus since 1947, served as the General Superior of the Alaska Jesuits from 1973 to 1976 and then served as the Provincial of the Oregon Province of the Society of Jesus, testified in his 2004 deposition that the Native population was "fairly loose on sexual matters" and that heinous sexual abuse of Native children by a priest would be "less impressive" than sexual abuse of a white child and that heinous sexual abuse of Native children by a priest wouldn't have much of an impact. (1/16/04 Deposition of Father William J. Loyens, S.J., Page 54, line 13 to Page 56, line 14).

### *FIRST CLAIM FOR RELIEF -- SEXUAL ABUSE OF A MINOR*
### *(Against All Jesuit Defendants)*

23. Plaintiffs incorporate by reference the preceding paragraphs of this Complaint and further allege that they grew up in Western Alaska. Plaintiffs and their families were members of the Catholic Church, and they attended services at Little Flower of Jesus Parish, located in Hooper Bay, Alaska. They were raised in a devout Roman Catholic family, baptized, confirmed, and regularly celebrated mass and received the sacraments through the Roman Catholic Church. As a result, Plaintiffs developed great admiration, trust, reverence,

POWER AND BROWN LLC
Attorneys At Law
P.O. Box 1809 • Bethel, Alaska 99559
TELEPHONE: 907.543.4700
FACSIMILE: 907.543.3777

Case 4:09-cv-00018-RRB   Document 1-2   Filed 04/10/09   Page 9 of 16

and respect for, and obedience to, Roman Catholic priests and members of Roman Catholic religious orders.

24. When they were molested Plaintiffs were minor children, and each was a parishioner at Little Flower of Jesus Parish, located within the Diocese of Fairbanks. Through their membership and participation as parishioners at Little Flower of Jesus Parish, Plaintiffs came to know, admire, trust, revere and respect the pastor of Little Flower of Jesus Parish and Joseph Lake, his deacon and religious instructor.

25. While they were minor children, each Plaintiff was sexually molested by Deacon Lake on numerous occasions. Defendants and each of them are responsible for the harm caused to Plaintiffs.

26. As a direct and proximate result of the felony sexual abuse of a minor described in the preceding paragraphs, Plaintiffs and all of them suffered great injury and harm including, but not limited to, severe emotional distress, great mental anguish, spiritual theft, loss of faith in God and the Catholic Church, loss of social interaction with others in the community, fear of priests and religious leaders, loss of access to the Holy Sacraments of the Roman Catholic Church, including, but not limited to, Holy Communion and Confession, and other economic and non-economic injury all to his damage in an amount in excess of $100,000.00, the exact amount to be proven at trial.

### SECOND CLAIM FOR RELIEF -- RESPONDEAT SUPERIOR
*(Against All Jesuit Defendants)*

27. Plaintiffs reallege and incorporate by reference herein each and every allegation contained herein above as though fully set forth herein, and further allege that at all times described herein Joseph Lake was acting as an agent, servant and/or employee of

POWER AND BROWN LLC
Attorneys At Law
P.O. Box 1809 • Bethel, Alaska 99559
TELEPHONE: 907.543.4700
FACSIMILE: 907.543.3777

Defendants. Therefore, Defendants are vicariously liable to the Plaintiffs for each and every act of the abusers, alleged herein, and all injuries and damages caused thereby or resulting there from.

### THIRD CLAIM FOR RELIEF -- AIDED IN AGENCY
### (Against All Jesuit Defendants)

28. Joseph Lake was aided in the commission of acts injurious to Plaintiffs his agency relationship with the Defendants. Accordingly, Defendants are vicariously liable to the Plaintiffs for each and every act of their agents as alleged herein, and all injuries and damages caused thereby or resulting there from.

### FOURTH CLAIM FOR RELIEF -- NEGLIGENT SUPERVISION
### (Against All Jesuit Defendants)

29. Plaintiffs incorporate by reference the preceding paragraphs of this Complaint and further allege that as Religious Orders of the Catholic Church, and trainers of Priests and religious persons, and by accepting parishioners and holding themselves out as a place of safety, guidance, healing, refuge and support, Defendants agreed to and did undertake to provide for the supervision, care and physical safety of Plaintiffs. All Defendants had a duty to use reasonable care in providing supervision of the minor Plaintiffs. Defendants breached this duty of care by exposing the minor Plaintiffs to unsupervised contact with Deacon Joseph Lake, enabling him to sexually abuse Plaintiffs.

30. Plaintiffs further allege that at all times described herein Defendants were grossly negligent in their placement, supervision and management of their agents and employees.

31. As a direct and proximate result of this negligence the Plaintiffs suffered the injuries and damages described in the other paragraphs of this Complaint, and Defendants are directly liable to the Plaintiffs for such injury, damage and loss.

32. During all times relevant herein, Defendants' agents directed, allowed and/or executed customs, patterns, policies and practices of sexual abuse by failing to supervise, monitor, discipline and otherwise protect Plaintiffs, ultimately leading to the abuse alleged herein.

### *FIFTH CLAIM FOR RELIEF – PUNITIVE DAMAGES*
### *(Against All Jesuit Defendants)*

33. The conduct of the Defendants and Joseph Lake as described in this Complaint, was willful and wanton misconduct, illegal, outrageous and malicious behavior, and conduct which showed a reckless indifference to the interests and well-being of minor children; therefore, Plaintiffs should be awarded punitive damages against all Defendants.

### *SIXTH CLAIM FOR RELIEF – EQUITABLE ESTOPPEL BASED ON CONCEALMENT AND BREACH OF FIDUCIARY DUTIES*
### *(Against All Jesuit Defendants)*

34. The conduct of the Defendants, as described above, misrepresented and concealed material facts concerning the abusers' relationships with and motives in relating to all Plaintiffs. In particular, the abusers were presented as beneficent, caring adult males whose intentions were to help and guide Plaintiffs, when in fact their relationship was to be one of sexual exploitation. Further, the Defendants acted with the intent that such conduct be acted upon by Plaintiffs and without knowledge of the real facts. Plaintiffs relied upon Defendants' conduct, without knowledge of the real facts, to their detriment. In addition, Defendants' continuing concealment of the abusers' sexual

misconduct and Defendants' misrepresentations, intentional concealment and/or negligent and/or reckless failure to prevent, disclose or discover the abusers' acts of sexual misconduct, also prevented Plaintiffs from discovering or suing upon the wrongs done to them. Defendants are therefore equitably estopped from asserting the statute of limitations in this action.

35. The sexual abuse of Plaintiffs and the circumstances under which it occurred caused Plaintiffs to develop confusion, various coping mechanisms and symptoms of psychological disorders, including great shame, guilt, self-blame, depression, repression and disassociation. As a result, Plaintiffs were unable to perceive or know that the conduct of the abusers was wrongful or abusive, to comprehend the existence or nature of their psychological and emotional injuries and their connection to the sexual abuse perpetrated upon them by the abusers. Only within two years prior to the service of this Complaint have the Plaintiffs begun to know or have reasons to know that the abusers and Defendants' wrongful or abusive acts caused their injuries. Plaintiffs' actions are therefore timely.

*SEVENTH CLAIM FOR RELIEF – EQUITABLE ESTOPPEL BASED ON SPIRITUAL AND SOCIAL DURESS*
*(Against All Jesuit Defendants)*

36. After committing the wrongful acts complained of herein, Defendants' agents discouraged Plaintiffs from communicating with parents and family members the facts alleged herein.

37. Defendants are equitably estopped from asserting a statute of limitations defense because they and/or their agents knowingly intimidated Plaintiffs and told Plaintiffs that if they were to come forward with the truth about the abuse, they would

Complaint for Damages
Case No. 4BE-09-_____ CI
Page 13 of 16

PAGE 13 of 16 EXHIBIT 2

face humiliation, ridicule, and/or be retaliated against. The perpetrators of the wrongful acts complained of herein communicated with Plaintiffs, and each of them, that if they disclosed the facts alleged herein to anyone, Plaintiffs and/or their families would be humiliated, denied access to the Holy Sacraments and/or spiritual blessings/and or would be condemned to eternal damnation or otherwise harmed.

38. Since Plaintiffs have suffered abuse by the agents of Defendants herein, they have been in fear of retaliation by agents of the Catholic Church and by Defendants' agents. Plaintiffs were also and continue to be in fear of spiritual and social retaliation and embarrassment for disclosing the physical and sexual abuse in the form of filing a lawsuit or pursuing a claim.

39. Plaintiffs were, accordingly, under duress, due fear of retaliation, ridicule, humiliation and further harm, tolling the statute of limitations for childhood sexual abuse claims.

### EIGHTH CLAIM FOR RELIEF – SPOLIATION OF EVIDENCE
(Against All Jesuit Defendants)

40. Defendants were aware that they had potential liability for abuse of children and others by their priests and religious leaders, specifically Joseph Lake, even before they were put on notice of the existence of the claims involving sexual abuse of minors by agents and employees of the defendants in the Fall of 2002 and in February 2003, respectively. Nevertheless, officers, employees and agents of Defendants concealed and destroyed by discarding, shredding, and burning documentary evidence relating to the misconduct of their priests and religious leaders prior to January of 2003 and thereafter.

41. The evidence which was destroyed was important to the Plaintiffs' ability

POWER AND BROWN LLC
Attorneys At Law
P.O. Box 1809 • Bethel, Alaska 99559
TELEPHONE: 907.543.4700
FACSIMILE: 907.543.3777

PAGE 14 of 16  EXHIBIT 2

Case 4:09-cv-00018-RRB   Document 1-2   Filed 04/10/09   Page 14 of 16

to prove their case and to defeat the Defendants' statute of limitations defense.

42. The destruction and concealment of this documentary evidence will impair Plaintiffs' ability to prove their claims and to defeat the Defendants' statute of limitations defense in this case.

43. Accordingly, Plaintiffs are entitled to damages for spoliation of evidence, for an order barring the Defendant from asserting any statute of limitations defense in this case, and for the presumption arising from the destruction of documents as authorized by the *Supreme Court of Alaska in Sweet v. Sisters of Providence*, 895 P.2d 484 (Alaska 1995). AD DAMNUM. As a direct result of their sexual abuse and sexual exploitation by Joseph Lake Plaintiffs have suffered and continue to suffer pain and suffering, severe and permanent emotional distress, resulting in physical manifestations, embarrassment, loss of self-esteem, humiliation and psychological injuries, were prevented and will continue to be prevented from performing their normal daily activities and obtaining the full enjoyment of life, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling, and on information and belief, have incurred and will continue to incur loss of income and/or loss of earning capacity.

WHEREFORE, Plaintiffs pray for judgment against the defendants as follows:

A. To all Plaintiffs, and each of them, compensatory damages awarded against all Defendants in an amount to be proven at trial, but which in any event is greater than $100,000.00 on each claim;

B. To all Plaintiffs, and each of them, an award of punitive damages against

POWER AND BROWN LLC
Attorneys At Law
P.O. Box 1809 • Bethel, Alaska 99559
TELEPHONE: 907.543.4700
FACSIMILE: 907.543.3777

Complaint for Damages
Case No. 4BE-09-_____ CI
Page 15 of 16

PAGE 15 of 16 EXHIBIT 2

all Defendants;

    C. To all Plaintiffs, awards of pre-judgment interest, costs, and attorney's fees, including an award of full, reasonable attorney fees under A.S. 09.60.070; and

    D. For such other and further relief as the Court deems just and proper.

    RESPECTFULLY SUBMITTED this ___ day of March, 2009, at Bethel, Alaska.

POWER AND BROWN, LLC,
Attorneys for Plaintiffs

By: _____
Sean Brown
Bar No. 0205012

POWER AND BROWN LLC
Attorneys At Law
P.O. Box 1809 • Bethel, Alaska 99559
TELEPHONE: 907.543.4700
FACSIMILE: 907.543.3777

Complaint for Damages
Case No. 4BE-09-_____ CI
Page 16 of 16

PAGE 16 of 16 EXHIBIT 2